# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ROBERT D. GOODRICH, individually and
in his capacity as trustee of the Robert D.
Goodrich Revocable Trust,

      *Plaintiff*,

   v.

BANK OF AMERICA, N.A. *et al.*,

      *Defendants*.

No. 21-cv-01344 (DLF)

## <u>MEMORANDUM OPINION</u>

Robert D. Goodrich, individually and in his capacity as trustee of the Robert D. Goodrich Revocable Trust, brings this action against Bank of America, N.A. and one of its employees Matthew Lettinga.  Goodrich alleges that the defendants breached a fiduciary duty owed to him, committed gross negligence, and violated the District of Columbia Securities Act.  *See* Compl. ¶¶ 19–30, Dkt. 1-2.  Before this Court is the defendants' Motion to Dismiss, Dkt. 6.  For the reasons that follow, the Court will grant the motion in part and deny it in part.

## I.    BACKGROUND

In 2014, Goodrich hired Bank of America to provide private wealth management services for assets titled in both his name and the name of his revocable trust.  *See* Compl. ¶ 7.  Goodrich deposited "virtually all of his savings and investible assets" with the bank and paid regular investment management fees.  *Id.* ¶¶ 7, 8.  In return, Bank of America agreed to "manage all aspects of Goodrich's financial well-being and provide investment advice on a discretionary basis consist[ent] with Goodrich's investment objectives, tolerance for risk, time horizon and financial status."  *Id.* ¶ 7.  The bank defined Goodrich's investment objective as "capital

appreciation" with a time horizon "in excess of ten years" and determined that he had "no short-term cash flow needs from his investment accounts." *Id.* ¶ 10.  Goodrich "routinely communicated with his team of [Bank of America] financial professionals" and received monthly statements from Bank of America regarding his investment accounts.  *Id.* ¶¶ 8, 10.

Based on Bank of America's advice, Goodrich opened two lines of credit with the bank. *See id.* ¶ 9.  These lines of credit, which were collateralized by Goodrich's investment accounts, allowed him to pay taxes and other expenses without making withdrawals from his investment accounts.  *See id.*  Bank of America advised Goodrich that this strategy would "result in better performance of his investment accounts," which in turn would cover interest payments and expenses associated with the lines of credit.  *Id.*

In March 2020, as COVID-19 impacted financial markets around the world, Goodrich became concerned about the performance of his investment accounts.  *See id.* ¶ 11.  On March 23, Goodrich called Lettinga, a portfolio manager for Bank of America with whom Goodrich had previously communicated regarding his accounts.  *See id.*  Lettinga told Goodrich that his investments "lost significant value due to the negative impact [of] COVID-19."  *Id.* ¶ 12. Goodrich "expressed his concerns" that his investments would continue to lose value and "his desire to protect his investment accounts by going into cash."  *Id.*  Lettinga informed Goodrich that "he did not believe in trying to 'time' the financial markets."  *Id.*  Goodrich alleges, however, that Lettinga later "exercised his discretionary investment authority and sold virtually all of [his] investments."  *Id.*

Following these transactions, Goodrich inquired about the reinvestment of his assets.  *See id.* ¶ 17.  Initially, Lettinga told Goodrich that "he did not feel it was the appropriate time to reinvest."  *Id.*  But in June 2020, Goodrich learned that due to the collateral requirements of his

lines of credit, the defendants could only reinvest a limited amount of Goodrich's assets in equity securities. *See id.* ¶ 18. Neither Bank of America nor Lettinga had informed Goodrich, before selling almost all his investments, that the collateral requirements on his account would restrict his reinvestment opportunities. *See id.* ¶ 13–14. If they had done so, Goodrich states that he would have "prohibited the liquidation of his investment portfolio." *Id.* ¶ 14. Ultimately, Goodrich argues that the above transactions caused him to sustain "losses of approximately $2 million." *Id.* ¶ 15.

Goodrich filed a civil action on March 19, 2021 in the Superior Court of the District of Columbia. *See* Compl. In Count I, Goodrich alleges that the defendants breached their fiduciary duty and committed gross negligence. *See id.* ¶¶ 19–24. In Count II, Goodrich alleges that the defendants violated Sections 31-5605.02 and 31-5606.05 of the District of Columbia Securities Act. *See id.* ¶¶ 25–30; Pl.'s Opp'n to Defs.' Mot. to Dismiss at 22, Dkt. 12. On May 17, 2021, the defendants removed the case to this Court. *See* Notice of Removal, Dkt. 1. The defendants now move to dismiss all claims for failure to state a claim upon which relief can be granted. *See* Defs.' Mot. to Dismiss, Dkt. 6. That motion is now ripe for review.

## II.    LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not amount to a specific probability requirement, but it does

require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  A complaint need not contain "detailed factual allegations," but alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted).  The assumption of truth does not apply, however, to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quotation marks omitted).  An "unadorned, the defendant-unlawfully-harmed-me accusation" is not credited; likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III.   ANALYSIS

The defendants move to dismiss Goodrich's complaint for five reasons.  First, they argue that Goodrich cannot state a claim for the breach of a fiduciary duty because he did not allege the breach of any duty set forth in his contract with Bank of America.  *See* Defs.' Mot. to Dismiss at 13–14.  Second, they argue that they are not liable for "claims stemming from [Goodrich's] own instructions" to sell his investments.  *Id.* at 7–10.  Third, they argue that the economic loss doctrine independently bars Goodrich's tort claims.  *See id.* at 10–11.  Fourth, they argue that Goodrich failed to plead that they acted in an extreme or reckless way, as necessary to state a

claim for gross negligence. *Id.* at 11–13. And finally, they argue that Goodrich failed to plead scienter, as necessary to state a claim under the relevant provisions of the D.C. Securities Act. *See id.* at 14–17.

### A.    Breach of Fiduciary Duty

"To state a claim for breach of fiduciary duty under District of Columbia law, a plaintiff must allege facts sufficient to establish: (1) the defendant owed plaintiff a fiduciary duty; (2) a breach of that duty; and (3) proximate cause and injury to be inferred from those facts." *Xereas v. Heiss*, 987 F.3d 1124, 1130 (D.C. Cir. 2021). "[A] fiduciary relationship is founded upon trust or confidence reposed by one person in the integrity and fidelity of another." *Id.* at 1131 (citation omitted). Courts may find a fiduciary relationship exists where circumstances show that the parties "extended their relationship beyond the limits of the contractual obligations to a relationship founded upon trust and confidence." *Paul v. Judicial Watch, Inc.*, 543 F. Supp. 2d 1, 6 (D.D.C. 2008) (citation omitted). Whether a defendant owes a fiduciary duty is a "fact-intensive question" that focuses on "the nature of the relationship, the promises made, the type of services or advice given and the legitimate expectations of the parties." *Xereas*, 987 F.3d at 1131 (citation omitted).

Goodrich has pleaded sufficient facts to establish that Bank of America owed him a fiduciary duty. Bank of America "assign[ed] a team of its employees to manage all aspects of Goodrich's financial well-being" and represented that it would "act in a fiduciary capacity to [him]." Compl. ¶ 7. In turn, Goodrich trusted Bank of America with managing his assets for approximately six years before the events giving rise to this action. *See id.* ¶¶ 7–10; *see also Curran v. Wells Fargo Bank, N.A.*, 2021 WL 6753480, at *6 (D.D.C. Mar. 11, 2021) (finding that a plaintiff plausibly alleged that the defendant bank owed her a fiduciary duty in a claim

"aris[ing] from a relationship in which the parties were in direct communication over a prolonged period of time"). Goodrich deposited nearly all his assets into his Bank of America accounts, *see* Compl. ¶ 8; "routinely communicated" with Bank of American employees regarding his investment accounts, *see id.* ¶¶ 10–11; and opened two lines of credit "based upon [their] advice and guidance", *see id.* ¶ 9. These allegations suffice, at this stage of the case, to establish that the parties entered into relationship that was "founded upon trust and confidence by one [entity] in the integrity and fidelity of another." *Xereas*, 987 F.3d at 1131 (internal quotation marks and citation omitted); *see also Curran*, 2021 WL 6753480, at *6 (holding that a defendant bank owes a duty of care under D.C. tort law when it undertakes "an obligation to protect [a plaintiff's] economic well-being or an obligation that implicated [his] economic expectancies"); *Merrill Lynch, Pierre, Fenner & Smith, Inc. v. Cheng*, 901 F.2d 1124, 1128 (D.C. Cir. 1990) (collecting cases in which courts in other jurisdictions "held that . . . a broker handling a discretionary account has a fiduciary duty to his customer").

Goodrich has also pleaded sufficient facts to show that the defendants breached their duty. As relevant here, Goodrich alleges that the defendants breached their duty by selling almost all his investment assets and failing to disclose the impact of that sale on reinvestment. *See* Compl. ¶¶ 13, 22. He alleges that the sale was "in total contradiction of [his] stated investment objectives, risk tolerance, and time horizon." *Id.* ¶ 13. He also alleges that the sale contradicted Lettinga's own advice about the dangers of "trying to 'time' the financial markets," *see id.* ¶ 12, and caused him to sustain a substantial economic loss, *see id.* ¶ 15. The defendants do not contest that this conduct would violate a common law duty of care. Accordingly, because the above acts contradicted Goodrich's "legitimate expectations," *Xereas*, 987 F.3d at 1131, and

harmed his "economic well-being," *Curran*, 2021 WL 6753480, at *6, Goodrich has stated a claim for the breach of fiduciary duty.

The defendants make three arguments to oppose that conclusion. First, they rely on an Investment Services Agreement that purportedly precludes Goodrich's breach of fiduciary duty claim. *See* Defs.' Mot. to Dismiss at 13–14, Dkt. 6–2. Second, they argue that they cannot be liable for selling Goodrich's assets because Goodrich instructed them to do so. *See id.* at 7–10. And finally, they argue that the District of Columbia's economic loss doctrine bars relief. *See id.* at 10–11. None of those arguments succeeds.

First, the defendants' reliance on the Investment Services Agreement is misplaced. It is well-settled that a court reviewing a motion to dismiss may "consider documents attached to or incorporated by the [plaintiff's] complaint." *Marcelus v. Corr. Corp. of Am.*, 540 F. Supp. 2d 231, 235 n.5 (D.D.C. 2008)). But Goodrich's breach of fiduciary duty claim does not reference or rely on the Investment Services Agreement. *See* Compl. ¶¶ 19–24. Instead, Goodrich simply alleges that the defendants owed him "legal and fiduciary duties to employ such care, skill, prudence, and judgment as might reasonably be expected of professional discretionary investment managers." Compl. ¶ 20. The defendant's reliance on *Hinton v. Corrections Corp. of America*, 624 F. Supp. 2d 45 (D.D.C. 2009), is also unavailing. It is true that *Hinton* considered a contract at the motion to dismiss stage that was neither attached to nor incorporated in the plaintiff's complaint. *See id.* at 47. But in that respect, *Hinton* conflicts with the D.C. Circuit's instruction that, "[i]n determining whether a complaint fails to state a claim, [courts] may consider *only* the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [they] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997) (emphasis added). Whether

7

an investment services contract governs the parties' relationship is thus an issue of fact that this

Court may address only following discovery.

Whether Goodrich instructed Lettinga to sell his shares is also a question of fact.

Although the complaint alleges that Goodrich "expressed his concerns" about the pandemic's

impact on financial markets and expressed "his desire to protect his investments by going into

cash," it does not allege that he instructed Lettinga to take any specific action.  Compl. ¶ 12.

Instead, it alleges that Lettinga sold the investments in an "exercise[] [of] his discretionary

investment authority."  *Id.*  That allegation is sufficient to foreclose the defendants' argument at

the motion to dismiss stage.  *See Hettinga*, 677 F.3d at 476.  Going forward, however, the

defendants will have an opportunity to prove that Goodrich ordered the sale of his investments—

a fact that, if established, would appear to foreclose any claim for breach of fiduciary duty.

Finally, the defendants have not shown that the economic loss doctrine bars Goodrich's

breach of fiduciary duty claim.  *See* Defs.' Mot. to Dismiss at 10–11.  As a general matter, that

doctrine provides that "a plaintiff who suffers only pecuniary injury as a result of the conduct of

another cannot recover those losses in tort."  *Aguilar v. RP MRP Wash. Harbour, LLC*, 98 A.3d

979, 982 (D.C. 2014) (citation omitted).  District of Columbia courts have recognized an

exception, however, "where a special relationship exists" between the parties.  *Heidi Aviation,*

*LLC v. Jetcraft Corp.*, 2021 WL 5310710, at *10 (D.D.C. Nov. 15, 2021) (quoting *Aguilar*, 98

A.3d at 986).  The existence of a special relationship depends on whether the defendants had an

"obligation to care for [the plaintiff's] economic well-being or an obligation that implicate[d]

[the] plaintiff's economic expectancies."  *Id.* at *11 (citing *Whitt v. Am. Property Const, P.C.*,

157 A.3d 196, 205 (D.C. 2017) (alterations and internal quotation marks omitted)).

8

Additionally, "contractual privity between the parties can suffice to show a close or intimate nexus and, thus, a special relationship." *Id.* (internal quotation marks and citation omitted).

Goodrich has pleaded sufficient facts to fall within the "special relationship" exception to the economic loss doctrine. *See Aguilar*, 98 A.3d at 986. As discussed above, Goodrich has adequately alleged that the defendants had an "obligation to care for [his] economic well-being or an obligation that implicated [his] economic expectancies." *Whitt*, 157 A.3d at 205 (quoting *Aguilar*, 98 A.3d at 985) (alterations and internal quotation marks omitted). Although the defendants argue that their contract with Goodrich precludes a special relationship, *see* Defs.' Mot. at 11, they may not rely on that contract at this stage of the case. Moreover, even if the parties' relationship were solely contractual, District of Columbia law provides that contractual privity can establish the "close" or "intimate nexus" necessary for a special relationship. *See Heidi*, 2021 WL 5310710 at *11–12 (finding that the plaintiff alleged sufficient facts to demonstrate that two parties in contractual privity had a special relationship). The defendants' reliance on the economic loss doctrine accordingly fails.

For the reasons above, Goodrich has stated a claim for the breach of a fiduciary duty. The Court will thus deny the defendants' motion to dismiss that claim.

## B.    Gross Negligence

The defendants also move to dismiss Goodrich's claim of gross negligence, arguing that Goodrich "fail[ed] to plead that Defendants acted in such an extreme and reckless way." Defs.' Mot. to Dismiss at 11–13. To show gross negligence, Goodrich must allege that the defendants acted in "such an extreme deviation from the ordinary standard of care as to support a finding of wanton, willful and reckless disregard or conscious indifference for the rights and safety of others." *Mero v. City Segway Tours of Wash., D.C., LLC*, 962 F. Supp. 2d 92, 100 (D.D.C.

2013) (quoting *Dist. of Columbia v. Walker*, 689 A.2d 40, 44–45 (D.C. 1997)).  The defendants must have "engaged in conduct so extreme as to imply some sort of bad faith." *Id.* (citation omitted).  Under ordinary circumstances, District of Columbia law does not recognize degrees of negligence.  *See Hernandez v. District of Columbia*, 845 F. Supp. 2d 112, 115–16 (D.D.C. 2012).  Instead, a gross negligence claim is only available under limited circumstances, such as "where gross negligence is a specific element of a claim or defense." *Hawkins v. Wash. Metro. Area Transit Auth.*, 311 F. Supp. 3d 94, 105 (D.D.C. 2018) (quoting *Hernandez*, 845 F. Supp. 2d at 116)).

Here, Goodrich's complaint fails to state a claim for gross negligence upon which relief can be granted. Goodrich alleges several times that the defendants acted in "reckless" and "wanton" fashion, thus constituting gross negligence. *See* Compl. ¶¶ 14 –17, 22–23.  But Goodrich never offers more than these conclusory allegations to show that the defendants acted in "some sort of bad faith." *Mero*, 962 F. Supp. 2d at 100.  And it is well-settled that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  The Court will accordingly dismiss Goodrich's gross negligence claim.

### C.     District of Columbia Securities Act

Lastly, the defendants move to dismiss Goodrich's claim under the District of Columbia Securities Act.  As relevant here, § 31-5605.02 of that Act provides that a person, in connection with rendering investment advice, shall not directly or indirectly "[e]mploy a device, scheme or artifice to defraud," or "[e]ngage in a transaction, practice, or course of business which operates, or would operate, as a fraud or deceit upon a person."  D.C. Code § 31-5605.02(a)(1)(A), (C). Section 31-5606.05 in turn provides that a person shall be civilly liable for violating § 31-

5602.02.  *See id.* § 31-5606.05(a)(3)(A).  That section further provides civil liability for persons receiving "consideration from the other person for advice as to the value of securities or their purchase or sale or for acting as an investment adviser . . . and employ[ing] a device, scheme, or artifice to defraud the other person or engag[ing] in an act, practice, or course of business which operates or would operate as a fraud or deceit on the other person."  *Id.* § 31-5606.05(a)(3)(B).

As relevant here, the text of those provisions closely resembles that of SEC Rule 10b–5.  That rule prohibits both "employ[ing] any device, scheme, or artifice to defraud" and "engag[ing] in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person" "in connection with the purchase or sale of any security."  17 C.F.R. § 240.10b-5(a), (c).  To state a claim under Rule 10b-5, a plaintiff must plausibly allege that a defendant acted with scienter, "a mental state embracing intent to deceive, manipulate, or defraud."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (citation omitted).  A plaintiff can plead scienter by pleading "[e]ither intentional wrongdoing or extreme recklessness."  *Liberty Prop. Trust v. Republic Props. Corp.*, 577 F.3d 335, 342 (D.C. Cir. 2009) (citation omitted).  For that purpose, extreme recklessness "is not merely a heightened form of ordinary negligence; it is an extreme departure from the standards of ordinary care" that is akin to "a lesser form of intent."  *SEC v. Steadman*, 967 F.2d 636, 641–42 (D.C. Cir. 1992) (citations omitted).

Stating a claim under § 31-5605.02(a)(1) and § 31-5606.05(a)(3)(B) similarly requires alleging scienter.  A phrase that "is obviously transplanted from another legal source . . . brings the old soil with it."  *Hall v. Hall*, 138 S. Ct. 1118, 1128 (2018) (citation omitted); *see also Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019).  And here, there are multiple indications that the relevant language in those provisions is transplanted from Rule 10b-5.  The provisions use

11

identical language to describe defendants' liability.  *See* 17 C.F.R. § 240.10b-5(a), (c); D.C.
Code §§ 31-5605.02(a)(1)(A), (C), 31-5606.05(a)(3)(B).  The Securities and Exchange
Commission enacted Rule 10b-5 in 1942, *see Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195–96
(1976), well before the D.C. Council passed both its current Securities Act, *see* Securities Act of
2000, D.C. Law 13-203, 47 D.C. Reg. 7837 (Oct. 26, 2000), and its predecessor statute, *see*
Investment Advisors Act of 1992, D.C. Law 9-216, 40 D.C. Reg. 37 (Mar. 17, 1993).  The
Supreme Court also interpreted the text of Rule 10b-5 to require scienter in 1976, well before the
D.C. Council used that language in its securities laws.  *See Ernst & Ernst*, 425 U.S. at 193.
Finally, neither § 31-5605.02 nor § 31-5606.05 reflect any intention to disclaim the requirement
of scienter.  For those reasons, the Court holds that the above provisions of the D.C. Securities
Act carry the "old soil" of scienter.[1] *Hall*, 138 S. Ct. at 1128.

Here, Goodrich has not plausibly alleged scienter.  Goodrich repeatedly alleges that the
defendants acted in a "reckless," "wanton," and "willful" manner.  *See, e.g.*, Compl. ¶¶ 13–17.
He also alleges that they "intentionally engaged" in conduct "with knowledge that it would cause
[him] irreparable damage."  Compl. ¶ 28.  But he has not alleged any facts that could support
either an "intent to deceive, manipulate, or defraud," *Tellabs*, 551 U.S. at 319, or "an extreme
departure from the standards of ordinary care," *Steadman*, 967 F.2d at 641–42.  *See* Compl.
¶¶ 25–30.  In particular, he does not allege that the defendants had a motive to harm him or
explain how they may have acted with "extreme recklessness," *Steadman*, 967 F.2d at 641.  And
regardless of whether his claim is subject to a heightened pleading standard,[2] "[t]hreadbare

---

[1] The D.C. Court of Appeals has not addressed whether § 31-5605.02 and § 31-5606.05 require
scienter.

[2] The Court need not decide whether claims under the D.C. Securities Act are subject to a
heightened pleading standard similar to that in the Private Securities Litigation Reform Act
(PSLRA), as opposed to the general standard in Federal Rule 9(b).  Under the PSLRA, a plaintiff

recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice" to state a claim for which relief can be granted.  *Iqbal*, 556 U.S. at 678.  Accordingly,

because Goodrich has not alleged sufficient facts to plausibly allege scienter, he has failed to

state a claim under the D.C. Securities Act.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the Defendants'

Motion to Dismiss, Dkt. 6.  A separate order consistent with this decision accompanies this

memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

May 19, 2022

---

must "state with particularity facts giving rise to a strong inference that the defendant acted with
the required state of mind." 15 U.S.C.A. § 78u–4(b)(2)(A).  Under Federal Rule 9(b), which
provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be
alleged generally," Fed. R. Civ. P. 9(b), a plaintiff must nonetheless follow the "strictures of
Rule 8," *Iqbal*, 556 U.S. at 686–87, which require him to make sufficient factual allegations,
"accepted as true, to state a claim to relief that is plausible on its face," *id.* at 678 (citation
omitted).  Goodrich has not pleaded sufficient facts to prevail under either standard.