IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT D. GOODRICH, <br> INDIVIDUALLY AND IN HIS CAPACITY <br> AS TRUSTEE OF THE ROBERT D. GOODRICH <br> REVOCABLE TRUST, <br><br> Plaintiff, <br><br> vs. <br><br> BANK OF AMERICA, N.A. <br> T/A "U.S. TRUST BANK OF AMERICA <br> PRIVATE WEALTH MANAGEMENT" and <br> MATTHEW LETTINGA, et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No: <br> ) 1:21-Cv-01344-DLF <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**FIRST AMENDED COMPLAINT**

    Plaintiff, Robert D. Goodrich, individually and in his capacity as Trustee of the Robert D. Goodrich Revocable Trust, by undersigned counsel, hereby files this First Amended Complaint against Bank of America, N.A., trading as "U.S Trust Bank of America Private Wealth Management", and Matthew Lettinga, Defendants herein, and allege as follows:

**I. JURISDICTION AND VENUE**

1.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1332. There is a complete

**EXHIBIT A**

diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

2. Venue is proper in this Judicial District pursuant to 28 U.S.C. 1391.

3. This matter was originally filed in the Superior Court for the District of Columbia and was removed by Defendants to this Judicial District.

## II. **PARTIES**

4. Robert D. Goodrich is a citizen of the District of Columbia with a residence located at 4800 17th Street NW, Washington DC 20011. At all times relevant to this Complaint, Robert D. Goodrich was a customer and/or account holder at Bank of America, N.A. and received investment advice and guidance from Matthew Lettinga, a portfolio manager employed by Bank of America, N.A., and other Bank of America, N.A. employees. Robert D. Goodrich is the Trustee of an estate planning instrument known as the Robert D. Goodrich Revocable Trust in which many of his personal assets are titled. For District of Columbia and federal taxes purposes, a revocable trust instrument is considered a "disregarded entity" and all tax consequences involving assets titled in the name of the Robert D. Goodrich Revocable Trust are reported on Robert D. Goodrich's individual tax returns.

5. Bank of America, N.A., trading as "U.S. Trust Bank of America Private Wealth Management" ("BOA"), is a corporate entity which provides private wealth management services to individuals and entities across the United States and specifically in the District of Columbia. BOA maintains offices in the District of Columbia at 1800 K Street NW, Washington DC 20006.

6. Matthew Lettinga is an individual employed by BOA in its office located at 1800 K Street NW, Washington DC, 20006. Upon information and belief, Matthew Lettinga is a citizen of the District of Columbia. At all times relevant to this Complaint, Matthew Lettinga was employed by BOA as a portfolio manager assigned by BOA to provide portfolio management services to Robert D. Goodrich.

### III. FACTS COMMON TO ALL COUNTS

**A. GOODRICH'S RELATIONSHIP WITH BOA AND LETTINGA.**

7. In approximately 2014, Robert D. Goodrich ("Goodrich") hired BOA to provide him with private wealth management services for the assets titled in his individual name as well as the assets titled in the name of his revocable trust. BOA described itself to Goodrich as an expert in the field of private wealth management services which would act in a fiduciary capacity of the "highest standards" to Goodrich. BOA stated that in consideration of Goodrich's payment of investment management

3

fees, BOA would assign a team of its employees to manage all aspects of Goodrich's financial well-being and provide investment advice on a discretionary basis with complete authority consistent with Goodrich's investment objectives, tolerance for risk, time horizon and overall financial status. Goodrich utilized the services of BOA as his investment advisor and trusted and relied upon its stated expertise.

8. As an investment manager functioning in a fiduciary capacity of the highest standards with complete discretionary management authority, BOA was obligated to act in the utmost good faith and to disclose to Goodrich all material facts in connection with the portfolio management services provided. Based upon the trust and confidence reposed in BOA, Goodrich deposited virtually all of his savings and investable assets into multiple separately titled accounts. BOA provided Goodrich a summary monthly statement regarding the status of his investment accounts which was titled as follows: "Bank of America, N.A. Combined Accounts Robert D. Goodrich Relationship".

9. Additionally, based upon the advice and guidance provided by BOA, Goodrich agreed to open two lines of credit which were collateralized by his investment accounts. BOA advised Goodrich to open the lines of credit in order to pay tax and other expenses owed by him without having to make

4

withdrawals from the investment accounts under its discretionary management control. BOA explained to Goodrich that utilizing the lines of credit to pay periodic business and tax expenses would result in better performance of his investment accounts and that the superior performance of the investment accounts would pay for any interest payments or expenses associated with maintaining the lines of credit.

10. Based upon the BOA documents currently in Goodrich's possession, BOA defined Goodrich's investment objective as seeking capital appreciation, defined his investment time horizon as "in excess of ten years" and determined that Goodrich had no short-term cash flow needs from his investment accounts. From the time Goodrich began utilizing BOA's portfolio management services in 2014 until March 23, 2020, Goodrich believed BOA was providing professional services in his best interests and consistent with his goals and objectives. Goodrich routinely communicated with his team of BOA financial professionals, provided all information requested and followed the advice provided.

B.  **FACTS RELATED TO BOA'S SALE OF GOODRICH'S INVESTMENT ASSETS ON OR ABOUT MARCH 23, 2020.**

11. In the weeks leading up to March 23, 2020, Goodrich was aware that issues related to the spread of the COVID-19 virus were negatively impacting the performance of the financial

5

markets across the globe and feared the value of the investments managed by BOA were declining in value. Concerned about the negative impact of COVID-19 related issues on the value of his BOA investment accounts, on March 23, 2020, Goodrich called and tried to reach Scott Chatham, the leader of his BOA team. Scott Chatham was not available to take Goodrich's call. Because Goodrich could not reach Scott Chatham, he telephoned Matthew Lettinga ("Lettinga"), a member of his BOA team who held the title of portfolio manager, and who Goodrich was familiar with based upon prior meetings and communications regarding his investment accounts.

12. In their phone conversation on March 23, 2020, Lettinga informed Goodrich that his investments had lost significant value due to the negative impact COVID-19 was having on the financial markets. In response, Goodrich expressed his concerns about the potential for continued deterioration of the financial markets and his desire to protect his investment accounts by going into cash. In response, Lettinga communicated words to the effect that he did not believe in trying to "time" the financial markets, i.e., making portfolio decisions based upon short term events. At the conclusion of their conversation, without providing any explanation of the ramifications and/or consequences of selling Goodrich's investments, Lettinga

exercised his complete discretionary investment authority and sold virtually all of Goodrich's investments managed by BOA.

13. Prior to selling virtually all of Goodrich's investments with BOA pursuant to its discretionary authority on or about March 23, 2020, Lettinga failed to disclose the following material facts to Goodrich:

- Selling virtually all of Goodrich's investable assets was in total contradiction of Goodrich's stated investment objectives, risk tolerance and time horizon as expressed in the investment policy statement;

- Selling virtually all of Goodrich's investment assets would result in realized losses which would cause irreparable damage to Goodrich's ability to reinvest in equity securities, and recoup those losses once financial markets improved, due to the collateral requirements of the lines of credit;

- It was totally unnecessary and completely reckless to immediately sell virtually all securities investments without prior consultation with the other members of the BOA investment team assigned to his accounts; and

- The significant tax ramifications of selling his investment portfolio or advise Goodrich to seek the advice of a tax professional before the sales were executed.

7

- Lettinga would not meaningfully reinvest Goodrich's sales proceeds back into the equity markets, even if Goodrich so requested, because Lettinga believed that market volatility would continue for the foreseeable future due to COVID-19; and

- The failure to meaningfully reinvest Goodrich's portfolio in the equity markets would result in the continued decline in value of the investment portfolio because the required payments for interest charges and business expenses would exceed any possible market return that did not include a significant equity component.

14. Lettinga's conduct on or about March 23, 2020, by immediately selling virtually all of Goodrich's investments prior to having Goodrich consult with Scott Chatham and other members of the BOA team or a tax professional and by intentionally failing to disclose to Goodrich the aforementioned material facts, was reckless and wanton and constituted gross negligence and/or willful misconduct because Lettinga knew that immediately selling Goodrich's investments at depressed values would cause irreparable injury to Goodrich based upon the collateral requirements imposed by the lines of credit. Specifically, Lettinga knew that the collateral requirements would severely restrict the percentage of Goodrich's investment

8

portfolio which could be reinvested in equity securities to allow the investment portfolio to recover from the realized losses incurred. Had Lettinga or BOA advised Goodrich of the materials facts identified in paragraph no. 13, Goodrich would have prohibited the liquidation of his investment portfolio and avoided the realized losses he sustained.

15. As a result of Lettinga's intentional, reckless, willful and/or wanton misconduct, which Lettinga knew would cause irreparable injury, Goodrich sustained losses of approximately $2,000,000. Additionally, Lettinga's intentional, reckless, willful and/or wanton misconduct has restricted Goodrich from reinvesting suitable percentages of his remaining savings in the equity markets so as to recoup his losses due to the collateral requirements of the lines of credit BOA advised Goodrich to acquire.

16. Indeed, had BOA not acted with intentional, reckless, willful and/or wanton conduct and intentionally failed to disclose material facts, Goodrich's investment accounts would have avoided all of the realized losses incurred as a result of the March 2020 sales and his investment accounts would have increased significantly in value.

C.   **CONCEALMENT OF THE WRONGDOING**

17. In the days following BOA's March 2020 sale of Goodrich's investment assets, Goodrich began inquiring of

9

Lettinga and other members of the BOA team when reinvestment of his assets would occur. Despite knowing that Goodrich would only be able to reinvest a small percentage of his remaining assets in equity securities due to the collateral requirements of the BOA lines of credit, Lettinga falsely informed Goodrich that he did not feel it was the appropriate time to reinvest and intentionally failed to discuss the limitations the collateral requirements imposed on the ability to reinvest Goodrich's savings in equity securities. Lettinga's false statements that he was waiting for the appropriate time to reinvest was made for the purpose of concealing his intentional, reckless, willful and/or wanton misconduct and to prevent Goodrich from discovering BOA's wrongdoing.

18. Indeed, it was not until late June 2020 that Goodrich was informed, for the first time, that due to the decreased value of his portfolio only limited dollar amounts of his remaining savings could be reinvested in equity securities due to the collateral requirements of the lines of credit.

## COUNT I
**(Gross Negligence/Breach of Fiduciary Duty – BOA & Lettinga)**

20. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-19.

21. BOA and Lettinga owed Plaintiff legal and fiduciary duties to employ such care, skill, prudence, and judgment as might reasonably be expected of professional discretionary investment

10

managers in connection with the sale of Goodrich's investments on or about March 23, 2020.

22. BOA and Lettinga owed Plaintiff a further duty to offer prudent investment advice. In providing investment advice to Plaintiff, BOA and Lettinga were obliged to assess Plaintiff's financial circumstances, investment objectives and tolerance for risk and to refrain from omitting material facts to ensure that the transactions executed in Goodrich's accounts were suitable for him.

23. BOA and Lettinga breached their duties to Plaintiff in at least eight ways:

- They intentionally, recklessly and wantonly exercised their complete discretionary management authority and sold virtually all of Goodrich's investable assets in total contradiction of Goodrich's stated investment objectives, risk tolerance and time horizon as set forth in his investment policy statement;

- They failed to disclose that selling virtually all of Goodrich's investable assets was in total contradiction of Goodrich's stated investment objectives, risk tolerance and time horizon as set forth in the investment policy statement;

- They failed to disclose that selling virtually all of Goodrich's investment assets would result in realized

11

losses which would cause irreparable damage to Goodrich's ability to reinvest in equity securities and to recoup those losses once financial markets improved, due to the collateral requirements of the lines of credit;

- It was totally unnecessary and completely reckless to immediately sell virtually all securities investments without prior consultation with the other members of the BOA investment team assigned to his accounts; and

- They failed to disclose the significant tax ramifications of selling his investment portfolio or advise Goodrich to seek the advice of a tax professional before the sales were executed.

- They failed to disclose that they would not meaningfully reinvest his investment portfolio in equity securities until market volatility caused by COVID 19 subsided;

- They failed to disclose the risks of the further depletion of Goodrich's investment portfolio, and subsequent margin calls, if Goodrich's investment portfolio was not achieving returns which exceeded the interest charges and business expenses being deducted from his accounts; and

12

- They failed to create an investment policy statement which described the risks of the Lines of Credit collateralized by the investment accounts and falsely stated that Goodrich had no short term cash needs.

24. BOA's and Lettinga's acts and omissions in liquidating Goodrich's investment portfolio on or about March 23, 2020 constituted gross negligence and/or willful misconduct because BOA and Lettinga knew Goodrich would suffer irreparable injury by its actions in liquidating his investment portfolio and knew such action was in complete violation of Goodrich's investment objectives, risk tolerance, investment time horizon and financial needs as set forth in his investment policy statement. Despite its direct knowledge of the irreparable damage which would be caused by liquidating Goodrich's investment portfolio, BOA and Lettinga liquidated the investment portfolio with deliberate indifference to and in reckless disregard of its obligations to avoid intentional injury to Goodrich and to execute only suitable investment transactions and to disclose all material facts to Goodrich.

25. Goodrich has suffered and will continue to suffer substantial damages proximately caused by BOA's and Lettinga's multiple breaches of the duties of care owed to Plaintiff.

    WHEREFORE, Plaintiff, Robert D. Goodrich, individually and in his capacity as Trustee of the Robert D. Goodrich Revocable

13

Trust, requests that judgment be entered in his favor and against Defendants, Bank of America, N.A. and Matthew Lettinga, jointly and severally, for compensatory and/or rescission damages in the amount of $2,500,000, with the exact amount to be determined at trial, plus prejudgment interest, costs and such other and further relief as justice may require.

### COUNT II
### (Violations of District of Columbia Securities Act – BOA & Lettinga)

26. Plaintiff hereby incorporates by reference the allegations in paragraphs 1-25.

27. BOA received monetary compensation from Plaintiff as a result of their business relationship.

28. By exercising its discretionary authority to liquidate Goodrich's investment portfolio on or about March 23, 2020 as it did, and/or failing to disclose all material risks to Goodrich prior to the liquidation of his investment portfolio, BOA engaged in a scheme, device and/or artifice to defraud Plaintiff in violation the District of Columbia Securities Act, codified at D.C. Code Ann. §§ 31-5605 *et seq*.

29. Specifically, BOA, by and through its agent, servant and/or employee, Lettinga, intentionally engaged in the liquidation of Goodrich's investment portfolio with knowledge that it would cause irreparable damage to Goodrich's investments, without any advice or explanation of the consequences, and knowing that a

such a liquidation was in direct violation of Goodrich's stated investment objectives, risk tolerance, investment time horizon and financial needs as set forth in his investment policy statement. 30. The violations by BOA and Lettinga of the District of Columbia Securities Act, codified at §§ 31-5605 *et seq.*, are further evidenced by the intentional omissions of material facts made by BOA and Lettinga to Plaintiff as detailed in paragraph no. 13 of this Complaint. 31.  BOA's   and Lettinga's intentional acts and omissions, as detailed in this Complaint, violated sections 31-5605.02 and 31-5606.05 of the District of Columbia Securities Act.

WHEREFORE, Plaintiff, Robert D. Goodrich, individually and in his capacity as Trustee of the Robert D. Goodrich Revocable Trust, requests that judgment be entered in his favor and against Defendants, Bank of America, N.A. and Matthew Lettinga, jointly and severally, for compensatory and/or rescission damages in the amount of $2,500,000, with the exact amount to be determined at trial, plus statutory interest, attorney's fees, costs and such other and further relief as justice may require.

### COUNT III
**(Gross Negligence/Breach of Fiduciary Duty – BOA & Lettinga)**

32. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-31.

15

33. Plaintiff offers this alternative cause of action for breach of fiduciary duty count in light of the rulings in this case which give favor to Defendant's position that Goodrich provided an "instruction" to liquidate his investment portfolio on or about March 23, 2020 and Defendants' allegedly did not exercise their complete discretionary authority to liquidate Goodrich's investments.

34. BOA and Lettinga owed Plaintiff legal and fiduciary duties to employ such care, skill, prudence, and judgment as might reasonably be expected of professional discretionary investment managers in connection with the sale of Goodrich's investments on or about March 23, 2020.

35. BOA and Lettinga owed Plaintiff a further duty to offer prudent investment advice. In providing investment advice to Plaintiff, BOA and Lettinga were obliged to assess Plaintiff's financial circumstances, investment objectives and tolerance for risk and to refrain from omitting material facts to ensure that the transactions executed in Goodrich's accounts were suitable for him.

36. Prior to the liquidation of his investment portfolio on or about March 23, 2020, Goodrich sought advice and guidance from Defendants as to risks or negative consequences of a complete liquidation of investment portfolio.

37. BOA, by and through its employee, Lettinga, explained to Goodrich that the only negative consequence of liquidating his entire investment portfolio would the possibility that the portfolio may not experience potential gains if the market recovered quickly while his assets remained in cash. During this discussion with Goodrich on March 23, 2020 and in the conversations Lettinga had with Goodrich in the weeks leading up to March 23, 2020, Goodrich, despite request, was not informed of the other serious risks posed by a total liquidation of his portfolio as described in paragraph no. 13 of this First Amended Complaint.

38. Because Goodrich was not aware of the all the serious and potentially irreversible risks posed by a total liquidation of his portfolio at a depressed value due the portfolio serving as collateral for the Lines of Credit, Goodrich informed Lettinga that he agreed and consented to the liquidation of his investment portfolio.

39. Prior to Goodrich agreeing and consenting to the liquidation of his investment portfolio by Defendants, BOA and Lettinga breached their duties to Plaintiff in at least seven ways:

- They failed to disclose that selling virtually all of Goodrich's investable assets was in total contradiction of Goodrich's stated investment

17

objectives, risk tolerance and time horizon as set forth in the investment policy statement;

- They failed to disclose that selling virtually all of Goodrich's investment assets would result in realized losses which would cause irreparable damage to Goodrich's ability to reinvest in equity securities and to recoup those losses once financial markets improved, due to the collateral requirements of the lines of credit;

- It was totally unnecessary and completely reckless to immediately sell virtually all securities investments without prior consultation with the other members of the BOA investment team assigned to his accounts;

- They failed to disclose the significant tax ramifications of selling his investment portfolio or advise Goodrich to seek the advice of a tax professional before the sales were executed;

- They failed to disclose that they would not meaningfully reinvest his investment portfolio in equity securities until market volatility caused by COVID 19 subsided;

- They failed to disclose the risks of the further depletion of Goodrich's investment portfolio, and

18

- subsequent margin calls, if Goodrich's investment portfolio was not achieving returns which exceeded the interest charges and living/business expenses being deducted from his accounts; and

- They failed to create an investment policy statement which described the risks of the Lines of Credit collateralized by the investment accounts and falsely stated that Goodrich had no short term cash needs.

40. BOA's and Lettinga's acts and omissions in failing to disclose the aforementioned risks to Goodrich prior to his agreeing and consenting to the liquidation of his investment portfolio on or about March 23, 2020 constituted gross negligence and/or willful misconduct because BOA and Lettinga knew Goodrich would suffer irreparable injury by its actions in liquidating his investment portfolio and knew such action was in complete violation of Goodrich's investment objectives, risk tolerance, investment time horizon, and financial needs as set forth in his investment policy statement. Despite its direct knowledge of the irreparable damage which would be caused by liquidating Goodrich's investment portfolio, BOA and Lettinga liquidated the investment portfolio with deliberate indifference to and in reckless disregard of its obligations to avoid intentional injury to Goodrich and to execute only suitable

investment transactions and to disclose all material facts to Goodrich.

41. Goodrich has suffered and will continue to suffer substantial damages proximately caused by BOA's and Lettinga's multiple breaches of the duties of care owed to Plaintiff.

WHEREFORE, Plaintiff, Robert D. Goodrich, individually and in his capacity as Trustee of the Robert D. Goodrich Revocable Trust, requests that judgment be entered in his favor and against Defendants, Bank of America, N.A. and Matthew Lettinga, jointly and severally, for compensatory and/or rescission damages in the amount of $2,500,000, with the exact amount to be determined at trial, plus prejudgment interest, costs and such other and further relief as justice may require.

Respectfully submitted,

Date:     1/26/23                         /s/ *Thomas C. Costello*
Thomas C. Costello, Bar No. 468800
Costello Law Group
409 Washington Avenue, Suite 410
Towson, Maryland 21204
(410) 832-8800
(410) 832-8807 (facsimile)
tcc@costellolawgroup.com

Attorneys for Plaintiff,
Robert D. Goodrich