UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROBERT D. GOODRICH, individually and in his capacity as trustee of the Robert D. Goodrich Revocable Trust,

   *Plaintiff*,

 v.

BANK OF AMERICA, N.A., *et al.*,

   *Defendants*.

No. 21-cv-01344 (DLF)

**MEMORANDUM OPINION**

  Robert D. Goodrich, individually and in his capacity as trustee of the Robert D. Goodrich Revocable Trust, brings this action against Bank of America, N.A. and one of its employees, Matthew Lettinga. Goodrich alleges that the defendants breached a fiduciary duty owed to him, committed gross negligence, and violated the District of Columbia Securities Act. *See* Am. Compl. ¶¶ 20–41, Dkt. 35. Before this Court is the defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, Dkt. 37. For the reasons that follow, the Court will grant the motion to dismiss in part and deny it in part and accordingly dismiss the gross negligence and D.C. Securities Act claims. As to the remaining claim for breach of fiduciary duty, the Court will grant the motion for summary judgment.

I.   **BACKGROUND**

   A.   **Factual Background**[1]

In 2014, Goodrich hired Bank of America to manage his money. Defs.' Stmt. of Undisputed Material Facts ¶ 1, Dkt. 37-2.[2] He also opened two lines of credit using his investment accounts as collateral based on the bank's advice. *Id.* ¶ 2; *see* Am. Compl. ¶ 9, Dkt. 35. In creating these accounts, Goodrich signed an Investment Services Agreement, which included terms and conditions for his relationship with the bank. Defs.' Stmt. of Undisputed Material Facts ¶ 3. Goodrich certified that he "received, read, understood, and agreed to" that agreement and the booklet of terms and conditions when he signed. *Id.* ¶ 6; Investment Securities Agreement, Defs.' Ex. 1, at 2, Dkt. 37-3. Bank of America updated those terms and conditions in 2020. Terms and Conditions, Defs.' Ex. 3, Dkt. 37-5.

In early 2020, Goodrich became concerned about the economic impact of the COVID-19 pandemic on his investment accounts. Defs.' Stmt. of Undisputed Material Facts ¶ 9; *see* Am. Compl. ¶ 11. After the pandemic began, the Bank sent multiple emails to its investors, including Goodrich, and one of these emails urged customers to "remain invested" during this "painful, but temporary correction." Defs.' Stmt. of Undisputed Material Facts ¶ 18, Defs.' Ex. 6 (March 13 Email), Dkt. 37-8. Goodrich replied to another of these emails, saying that he "appreciate[d] the updates." Defs.' Ex. 7 (March 19–20 Emails), Dkt. 37-9. That email advised investors to maintain "a well-diversified portfolio while rebalancing over time." *Id.*

---

[1] This memorandum opinion addresses both the defendants' motion to dismiss and their motion for summary judgment. The allegations in the original complaint are outlined in this Court's prior memorandum opinion, Dkt. 15, and relevant amendments to it are discussed below.

[2] When the Court cites to the Defendants' Statement of Facts, it uses only those facts Goodrich did not dispute. Otherwise, it will note any dispute Goodrich raised.

On March 23, 2020, at approximately 8:53 AM, Matthew Lettinga, a portfolio manager at Bank of America, received a high importance email from Scott Chatham, a senior vice president at the bank, asking Lettinga to call Goodrich "before [the] market opens" because Goodrich "want[ed] to sell everything." Defs.' Ex. 8 (March 23 Email 1), Dkt. 37-10. At around 9:00 AM, Goodrich spoke on the phone with Matthew Lettinga, a portfolio manager at Bank of America. Defs.' Facts ¶ 24. Lettinga and Goodrich dispute exactly what was said in the phone call, but at the end of the call, Lettinga sold a portion of Goodrich's assets. *See* Defs.' Stmt. of Undisputed Material Facts ¶¶ 24–37. Goodrich alleges this portion consisted of "virtually all" of his assets. Am. Compl. ¶ 12. Lettinga testified that he sold the assets pursuant to "Goodrich's instructions," Defs.' Stmt. of Undisputed Material Facts ¶ 38, while Goodrich "denies giving an 'instruction' that invalidated Defendants' complete discretionary authority." Pl.'s Resp. to Defs.' Stmt. of Facts ¶¶ 37–40, Dkt. 39-1.

Bank of America kept several records of the call between Lettinga and Goodrich. Lettinga noted the call in Salesforce. He indicated that despite his recommendations, Goodrich "had made up his mind and directed [me] to sell on the open." Defs.' Ex. 10 (Salesforce Note), Dkt. 38-2. The day of the call, Lettinga also emailed Chatham telling him that "he [Goodrich] wanted to sell everything." Defs.' Ex. 17 (March 23 Email 2), Dkt. 37-19.

After the sale, Goodrich asked about reinvesting his assets. Am. Compl. ¶ 17. In June 2020, the Bank told Goodrich that it could only reinvest limited amounts of his remaining savings in equity securities because of the "collateral requirements of the lines of credit." *Id.* ¶ 18. Goodrich claims the Bank did not tell him about this potential danger before his decision to sell. *Id.* ¶ 13. Goodrich alleges the loss of $2 million due to the actions of Lettinga and the Bank. *Id.* ¶ 15.

3

## B.   Procedural History

Goodrich filed a civil action on March 19, 2021, in the Superior Court of the District of Columbia.  Compl., Dkt. 1-2 at 10.  In Count I, Goodrich alleged that the defendants breached their fiduciary duty and committed gross negligence.  *See id.* ¶¶ 19–24.  In Count II, Goodrich alleged that the defendants violated §§ 31-5605.02 and 31-5606.05 of the District of Columbia Securities Act.  *See id.* ¶¶ 25–30.  On May 17, 2021, the defendants removed the case to this Court.  *See* Notice of Removal, Dkt. 1.  The defendants moved to dismiss all claims for failure to state a claim upon which relief can be granted.  *See* Defs.' Mot. to Dismiss, Dkt. 6.

This Court granted that motion in part and denied it in part.  Mem. Op. at 1, Dkt. 15.  It dismissed the claims of gross negligence and violation of the D.C. Securities Act for failure to state a claim.  *Id.* at 10, 13.  It allowed the breach of fiduciary duty claim to proceed but noted that if the defendants established that Goodrich ordered the sale of his investments, that "would appear to foreclose any claim for breach of fiduciary duty."  *Id.* at 8.

After a dispute over the scope of discovery, this Court ordered the defendants to file a supplemental memorandum addressing whether "an explicit instruction from a customer to his discretionary investment manager precludes an action for breach of fiduciary duty."  Min. Order of July 1, 2022.  The defendants filed a memorandum, Dkt. 21, and Goodrich filed a response, Dkt. 22.  The Court then ruled that "under the contract's terms, an explicit instruction to sell would preclude liability" regardless of additional facts that could be unearthed by discovery.  Min. Order of August 12, 2022.  But this Court also noted the factual dispute over whether Goodrich instructed Lettinga to sell, so it permitted limited discovery on that issue.  *Id.*

After discovery but before the filing of Bank of America's motion for summary judgment, Goodrich filed an amended complaint re-raising some of his previously dismissed claims.  Am.

Compl. In Counts I and III, he maintains the defendants breached their fiduciary duty and acted with gross negligence. *See id.* ¶¶ 20–25, 32–41. These counts contain largely the same allegations as those in Count I of the original complaint, but Goodrich has now alleged the defendants failed to inform him of additional risks of selling his assets. *See id*. ¶¶ 13, 39. Count III purports to establish an "alternative cause of action," *id.* ¶ 33, but it merely adds more detail to the failures to disclose already mentioned in the original complaint and in Count I, *see id.* ¶¶ 36–39. *Accord* Compl. ¶¶ 19–24. In Count II, Goodrich again alleges the defendants violated §§ 31-5605.02 and 31-5606.05 of the D.C. Securities Act. *See* Am. Compl. ¶¶ 26–31. He adds only a clause to Count II of his original complaint, once more related to the bank's purported failure to disclose risks. *Compare* Am. Compl. ¶ 28, *with* Compl. ¶ 27. The defendants moved to dismiss Goodrich's amended complaint or, in the alternative, moved for summary judgment in their favor. *See* Defs.' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, Dkt. 37.

## II.  LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). A complaint need not contain "detailed factual allegations," but alleging facts that are

"merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). The assumption of truth does not apply, however, to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quotation marks omitted). An "unadorned, the defendant-unlawfully-harmed-me accusation" is not credited; likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Ultimately, "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Under Rule 56, summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48 (1986). A "material" fact is one that could affect the outcome of the lawsuit. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). A dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895. In reviewing the record, the court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000).

"merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). The assumption of truth does not apply, however, to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quotation marks omitted). An "unadorned, the defendant-unlawfully-harmed-me accusation" is not credited; likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Ultimately, "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Under Rule 56, summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48 (1986). A "material" fact is one that could affect the outcome of the lawsuit. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). A dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895. In reviewing the record, the court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000).

"merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). The assumption of truth does not apply, however, to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quotation marks omitted). An "unadorned, the defendant-unlawfully-harmed-me accusation" is not credited; likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Ultimately, "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Under Rule 56, summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48 (1986). A "material" fact is one that could affect the outcome of the lawsuit. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). A dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895. In reviewing the record, the court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000).

A party "opposing summary judgment" must "substantiate [its allegations] with evidence" that "a reasonable jury could credit in support of each essential element of [its] claims." *Grimes v. District of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015). The moving party is entitled to summary judgment if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.   ANALYSIS

### A.   Motion to Dismiss

This Court already dismissed Goodrich's gross negligence and D.C. Securities Act claims. Mem. Op. at 10, 13. But in his amended complaint, Goodrich has raised the same claims with slight changes. Am. Comp. ¶¶ 20–25, 32–41; *accord* Compl. ¶¶ 19–24. The defendants again move to dismiss both claims. Because Goodrich has not asked for reconsideration of this Court's previous ruling, the Court evaluates whether any of Goodrich's amendments cure the defects identified in the Court's previous order and thus state a plausible claim for relief.

#### 1.   *Gross Negligence*

This Court previously held that the gross negligence claim in Goodrich's original complaint must be dismissed because, at a minimum, Goodrich "never offer[ed] more than . . . conclusory allegations to show that the defendants acted in some sort of bad faith." First Mem. Op. at 10 (cleaned up).[3] Goodrich's new allegations in his amended complaint do not alter that conclusion.

---

[3] As the Court also explained in its first memorandum opinion, gross negligence claims are only available in limited circumstances, such as "where gross negligence is a specific element of a claim or defense." *Hawkins v. Wash. Metro. Area Transit Auth.*, 311 F. Supp. 3d 94, 105 (D.D.C. 2018). Although Goodrich does not state it explicitly, his gross negligence claim pairs with his breach of

7

"[G]ross negligence implies an extreme departure from the ordinary standard of care." *Wager v. Pro*, 603 F.2d 1005, 1010 (D.C. Cir. 1979) (internal quotation marks omitted). In the District of Columbia, this deviation must "support a finding of wanton, willful and reckless disregard or conscious indifference for the rights and safety of others." *D.C. v. Walker*, 689 A.2d 40, 44 (D.C. 1997). The actor's conduct under this standard must usually "imply some sort of bad faith." *Id.* If no evidence of subjective bad faith exists, a plaintiff could demonstrate "that the actor acted in disregard of a risk so obvious that the actor must be taken to be aware of it and so great as to make it highly probable that harm would follow." *Id.* at 44–45 (cleaned up). Goodrich added three new allegations in Count I that might bear on gross negligence: the defendants failed to disclose their delay in reinvestment until after the pandemic subsided, the defendants failed to disclose future risks if Goodrich's portfolio did not achieve enough returns to exceed interest and business expenses, and the defendants failed to create an investment policy statement that described the risks of the collateralized lines of credit. Am. Compl. ¶ 23. Goodrich has also added Count III, which alleges additional details about Goodrich's decision and the conversations between Lettinga and Goodrich. *Id.* ¶¶ 36–38.

But these allegations likewise fail to support a plausible conclusion of gross negligence. Goodrich has not added additional allegations that suggest any sort of bad faith. To the contrary, Goodrich merely claims that Bank of America and Lettinga did not inform him about enough of the risks involved with selling his assets, especially related to future reinvestment. *See id.* ¶¶ 20–25, 32–41. The only statement that nears the mark is the claim that the defendants "falsely stated that Goodrich had no short term cash needs." Am. Compl. ¶ 23. Yet Goodrich does not allege

---

fiduciary duty claim and thus appears to be an element of that other claim. *See* Am. Comp. ¶¶ 20, 32.

this statement was made in bad faith and gives no further clarification about it. Nor does Goodrich allege sufficient facts to show the defendants ignored "a risk so obvious that the actor must be taken to be aware of it and so great as to make it highly probable that harm would follow." *Walker*, 689 A.2d at 44–45 (cleaned up). He simply states in conclusory fashion that the defendants "knew [he] would suffer irreparable injury" and liquidated his portfolio "with deliberate indifference to and in reckless disregard of [their] obligations." Am. Compl. ¶ 24; *see Iqbal*, 556 U.S. at 678 ("[W]e are not bound to accept as true a legal conclusion couched as a factual allegation." (cleaned up)). And Goodrich never connects the alleged failures of disclosure to an obvious high probability of subsequent harm, the only alternative to showing bad faith. *See Walker*, 689 A.2d at 44–45. In sum, his additional assertions do not allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Accordingly, the Court will dismiss Goodrich's amended gross negligence claim.

        2.     *D.C. Securities Act*

The Court previously held that Goodrich failed to state a claim under the D.C. Securities Act because he did not plausibly allege scienter. Mem. Op. at 13. Again, Goodrich's amendments have not changed that conclusion.

Goodrich's claims stem from §§ 31-5605.02 and 31-5606.05 of the D.C. Securities Act. Am. Compl. ¶ 31. Goodrich alleges that the defendants "engaged in a scheme, device, and/or artifice to defraud" him. *Id.* ¶ 28. This matches the language of subsections 31-5605.02(a)(1)(A) and 31-5606.05(a)(3)(B)(ii), which refer to "employ[ing] a device, scheme, or artifice to defraud." Goodrich does not use any other language in his amended complaint indicating his reliance on anything other than subsections 31-5605.02(a)(1)(A) and 31-5606.05(a)(3)(B)(ii). *See* Am. Compl. ¶¶ 26–31. If an entity acts as an "investment adviser or representative" in violation of

9

these sections, § 31-5606.05 holds that entity civilly liable. D.C. Code § 31-5606.05(a)(3)(A). Put simply, Goodrich must allege facts showing that the defendants defrauded him or engaged in actions that would operate as fraud against him. To state a claim under these sections, this Court previously held that a plaintiff must plausibly allege the defendant acted with scienter. Mem. Op. at 11–12. Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 319 (2007) (cleaned up). Because Goodrich must allege scienter,[4] Goodrich must either plead "intentional wrongdoing or 'extreme recklessness'" to survive a motion to dismiss. *Liberty Prop. Tr. v. Republic Props. Corp.*, 577 F.3d 335, 342 (D.C. Cir. 2009) (quoting *SEC v. Steadman*, 967 F.2d 636, 641 (D.C. Cir. 1992)).

In his amended complaint, Goodrich merely added one clause claiming the bank "fail[ed] to disclose all material risks to Goodrich prior to the liquidation of his investment portfolio" on March 23, 2020. Am. Compl. ¶ 28; *see* Compl. ¶ 27. However, Goodrich already made this allegation in his original complaint. He wrote that the defendants' claimed violations were "further

---

[4] Goodrich challenges this Court's conclusion that scienter is required for a claim under these sections of the D.C. Securities Act. *See* Opp'n at 10–13 & n.1. But he has not filed a motion for reconsideration of this Court's previous opinion. *See infra* note 7. The authorities he cites from other jurisdictions relate to the absence of a scienter requirement from provisions analogous to a *different* subsection of the D.C. Securities Act, § 31-5606.05(a)(1)(B), which makes liable a person who "offers or sells a security by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statement made, in the light of the circumstances under which made, not misleading, the buyer does not know of the untruth or omission and the offeror or seller does not sustain the burden of proof that the offeror or seller did not know, and in the exercise of reasonable care could not have known, of the untruth or omission." *See Kronenberg v. Katz*, 872 A.2d 568, 599 (Del. Ch. 2004) (referencing 70 Pa. Stat. § 1-501(a)); *Busse v. Pac. Cattle Feeding Fund No. 1*, 896 S.W.2d 807, 815 (Tex. App. 1995) (citing Am. Gen. Ins. Co. v. Equitable Gen. Corp., 493 F. Supp. 721 (E.D. Va. 1980) (referencing Tex. Gov't Code § 4008.053 (formerly cited as Tex. Code § 581-33(B))); *Farmers & Merchs. Bank v. Hamilton Hotel Partners of Jacksonville Ltd.*, 702 F. Supp. 1417, 1422 (W.D. Ark. 1988) (referencing Ark. Code § 23-42-106(a)(1)(B)). Besides these authorities, the sole remaining case Goodrich cites contradicts his position; it explicitly notes that a provision with similar language to the one under which Goodrich brings his claim may in fact *require* scienter. *See Rose v. Dobras*, 128 Ariz. 209, 214 (Ct. App. 1981) (differentiating Ariz. Rev. Stat. § 44-1991(A)(1) from § 44-1991(A)(2)).

10

evidenced by the intentional omissions of material facts . . . as detailed in paragraph no. 13 of this Complaint." Compl. ¶ 29; *see* Am. Compl. ¶ 30. Paragraph 13 discusses the material risks Goodrich claims the defendants should have disclosed. *See* Compl. ¶ 13; Am. Compl. ¶ 13.

As such, Goodrich's allegations still do not push his complaint past the line required to infer scienter. Goodrich never posits any facts showing "intentional wrongdoing," *Liberty Prop. Tr.*, 577 F.3d at 342, on the part of the defendants. He instead merely asserts intentionality in conclusory fashion throughout his complaint. Am. Compl. ¶¶ 14, 29–31. These "conclusory statements" "do not suffice" to create a plausible claim. *Iqbal*, 556 U.S. at 678. Likewise, Goodrich has not alleged facts giving rise to an inference that the defendants acted with "extreme recklessness," the other option for plausibly alleging scienter. *Steadman*, 967 F.2d at 641.[5] Because his amended complaint fails to add any allegations building a plausible case for scienter in the defendants' minds, Goodrich's complaint again does not state a claim for violation of the D.C. Securities Act.

B.     **Motion for Summary Judgment**[6]

The defendants also move for summary judgment on Goodrich's remaining claim for breach of fiduciary duty. They argue that the parties' contract disclaimed fiduciary duties in

---

[5] Goodrich argues that, to plead scienter, he need only show the defendants knew what they were doing and knew "the consequences of those actions." *Svalberg v. SEC*, 876 F.2d 181, 184 (D.C. Cir. 1989) (citation omitted). But *Svalberg* involved individuals knowingly contradicting previous factual statements they made to their investors. *See id.* Here, Goodrich never alleges that Lettinga or Bank of America contradicted previous factual representations; instead, he merely makes conclusory claims about their intentionality and recklessness. No factual allegations rise to a level of extreme recklessness which "presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Steadman*, 967 F.2d at 641–42 (citation omitted).

[6] The Court will not dismiss the fiduciary-duty claim because the Court's previous opinion already allowed that claim to proceed to the summary-judgment stage. *See* Mem. Op. at 9. The defendants have only argued for dismissal of this claim in a footnote in their most recent motion. Defs.' Mot.

11

general and all liability for acting on Goodrich's instructions and that the defendants acted on Goodrich's instructions. Defs.' Mem. at 18–25.

1. *Liability Based on Customer Instructions*

Goodrich agreed to a list of terms and conditions when he originally contracted with the Bank. Investment Securities Agreement at 2. By signing, Goodrich certified that he had "received, read, understood and agreed to" those terms and conditions. *Id.* The terms and conditions included the following clauses related to the Bank's potential liability:

> The Bank is responsible for the performance of only such duties as are specifically set forth in the Agreement with no implied duties or responsibilities . . . . The Bank is not liable . . . for actions taken or omitted . . . pursuant to instructions from Owner or from any person the Bank believes, in good faith, is Owner or is or Owner's authorized agent for the issuance of such instructions.

Terms and Conditions § VI.A, at 12.

Under D.C. law, exculpatory clauses in contracts are generally enforced. *See Moore v. Waller*, 930 A.2d 176, 179 (D.C. 2007). Courts will not enforce them, however, when the party the clause protects engages in "gross negligence, recklessness or intentional torts." *Carleton v. Winter*, 901 A.2d 174, 181 (D.C. 2006). In addition, a "fundamental requirement of any exculpatory provision is that it be clear and unambiguous." *Moore*, 930 A.2d at 181. "Thus, a court applying D.C. law will only enforce a liability waiver if it clearly and unambiguously expresses an intent to release the party from liability for tortious conduct, and to the extent the conduct is not grossly negligent, reckless, or intentional in nature." *Mero v. City Segway Tours of Washington DC, LLC*, 962 F. Supp. 2d 92, 97 (D.D.C. 2013).

---

at 13 n.10. But the Court "need not consider cursory arguments made only in a footnote." *Hutchins v. District of Columbia*, 188 F.3d 531, 539 n.3 (D.C. Cir. 1999).

The waiver in this case is clear and unambiguous. It states that the Bank is not liable for any actions taken pursuant to the owner's instructions. Terms and Conditions § VI.A at 12. In fact, the terms and conditions include multiple references to this waiver. Section II.D.2.b says that the "Owner will be liable for any losses resulting from the Bank's compliance with Owner's or Owner's authorized agent's instructions" regarding purchase or sale. Terms and Conditions at 6. In the same page, the conditions also free the Bank from liability for actions and omissions resulting from any emails from the owner. *Id.* § II.D.2.d.i. These provisions unambiguously free the defendants from liability if they act in accordance with the owner's stated instructions. Goodrich argues that these disclaimers were not clear because they did not explicitly reference "fiduciary duty." Opp'n at 20–24. But the provisions *do* explicitly contain phrases about liability: "is not liable" and "Owner will be liable." Whether the clauses mention fiduciary duty or not, the language here sufficiently forecloses claims for liability—whether of a fiduciary nature or otherwise—if the Bank followed Goodrich's instructions.[7]

Thus, the remaining question is whether the defendants followed Goodrich's instructions when they sold his assets on March 23, 2020.[8] *See* Min. Order of Aug. 12, 2022. Under the

---

[7] The Court also rejects Goodrich's arguments that the waiver of fiduciary duty and the disclaimer based on customer instructions are unenforceable. As discussed in Section III.B.2, *infra*, Goodrich failed to file a proper motion for reconsideration challenging the Court's prior rulings on this issue and, in any event, he fails to offer any argument warranting disruption of the law of the case.

[8] Despite not filing a motion for reconsideration nor offering a reason to disrupt the law of the case, *see supra* note 7, Goodrich challenges the waiver's enforceability based on federal and D.C. statutory law (the Securities Exchange Act of 1934, the Investment Adviser's Act of 1940, and the D.C. Securities Act), *see* Opp'n at 16–18. This challenge fails for several reasons. First, Goodrich has not brought claims under the Securities Exchange Act or the Investment Advisers Act, and his claim under the D.C. Securities Act has been dismissed. Second, Goodrich fails to explain how the contract specifically violated any of these statutes' particular provisions except for his D.C. Securities Act claim, which is dismissed. Third, the statutes merely ban contracts that waive compliance with their other provisions. *See* 15 U.S.C. §§ 78cc(a), 80b-15(a); D.C. Code § 31-5606.05(i).

13

disclaimer of liability based on a customer's instruction, this would preclude liability, including liability based on a related breach of fiduciary duty.  Even viewed in the light most favorable to Goodrich, all record evidence on this issue makes it clear beyond any genuine dispute that the defendants' sale was pursuant to Goodrich's express instructions.  Although Goodrich disputes Lettinga's exact warnings during their phone call, Pl.'s Resp. to Defs.' Stmt. of Facts ¶¶ 26–37, Goodrich does not dispute the documented evidence of an instruction to sell.  Lettinga made a database note that day indicating that Goodrich "had made up his mind and directed my [sic] to sell on the open."  Defs.' Ex. 10, Dkt. 38-2.  Lettinga also emailed Chatham on March 23 saying that "he [Goodrich] wanted to sell everything."  Email from Matthew Lettinga to Scott Chatham (Mar. 23, 2020), Dkt. 37-19.  Perhaps most notably, Goodrich himself emailed Chatham on April 9, 2020, writing, "As we've discussed, I *wrongly* asked [Lettinga] to sell my market investments on March 23."  Email from Robert Goodrich to Scott Chatham (Apr. 9, 2020) (emphasis added), Defs.' Ex. 12, Dkt. 37-14.  In his own affidavit, Goodrich admits he "expressed [his] desire to Matthew Lettinga that [his] investment portfolio be liquidated" and that if facts had been different, he "would not have asked that [his] investment portfolio be liquidated."  Goodrich Affidavit ¶¶ 14, 16, Dkt. 39-2.  In other words, Goodrich may dispute whether the defendants disclosed certain facts or gave him certain warnings, but he does not dispute that the defendants followed Goodrich's instructions by selling his assets.  That fact forecloses liability based on the language of the terms and conditions, and there is no "genuine dispute" over its truth.  Fed. R. Civ. P. 56(a).  The defendants are thus entitled to summary judgment on Goodrich's breach of fiduciary duty claim.  To the extent Goodrich denies "giving an 'instruction' that invalidated Defendants' complete discretionary authority over his portfolio," Pl.'s Resp. to Defs.' Stmt. of Facts ¶¶ 37, the Court has already rejected this legal argument, as discussed at greater length in Section III.B.2, *infra*.

2. *Enforceability of Contract Terms*

Goodrich dedicates a substantial part of his opposition to arguing that the waiver of fiduciary duty and the disclaimer based on customer instructions are unenforceable. *See* Opp'n at 13–27. But as the Court has already noted, *see supra* note 7, these arguments fail for two independent reasons.

First, Goodrich failed to file a proper motion for reconsideration as to the enforceability of the contract terms. In its August 12, 2022 order, this Court ruled on this issue and held that "[s]uch limitations and disclaimers of any fiduciary duty are routinely upheld" and "under the contract's terms, an explicit instruction to sell would preclude liability." Min. Order of Aug. 12, 2022 (citing *Capitol Just., LLC v. Wachovia Corp.*, No. 07-cv-2095, 2008 WL 11388566, at *6 (D.D.C. June 11, 2008); *Bynum v. Equitable Mortg. Grp.*, No. 99-cv-2266, 2005 WL 818619, at *19 (D.D.C. Apr. 7, 2005)); *see also Trumball Invests., Ltd. I v. Wachovia Bank, N.A.*, 436 F.3d 443, 447 (4th Cir. 2006) (concluding that the relevant contractual language provided the bank discretion to ignore a direct order to sell securities). The Court twice admonished Goodrich that it would not reconsider these rulings without a proper motion for reconsideration. *See* Min. Order of Nov. 30, 2022 ("[I]f the basis for requesting further discovery is again to dispute the Court's previous orders, *see* Minute Order[] of August 12, 2022 . . . the plaintiff is admonished that the Court will not reconsider its orders absent a properly filed motion for reconsideration."); Min. Order of Mar. 27, 2023 ("The parties are reminded that the Court will adhere to its prior rulings absent a properly filed motion for reconsideration."). Goodrich has thus failed to present this issue properly—*i.e.*, in a timely filed motion for reconsideration of the August 12, 2022 order.

Second, Goodrich has failed to persuade the Court that it should upset the law of the case on the enforceability of the waiver and disclaimer. The "law-of-the-case doctrine refers to a family

15

of rules embodying the general concept that a court involved in later phases of a lawsuit should not re-open questions decided by that court or a higher one in earlier phases." *Wye Oak Tech. v. Republic of Iraq*, 24 F.4th 686, 697 (D.C. Cir. 2022) (Jackson, *J.*). Although the "law of the case doctrine leaves discretion for the Court to reconsider its decisions prior to final judgment," the "doctrine instructs, however, that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Spirit of Sage Council v. Kempthorne*, 511 F. Supp. 2d 31, 38 (D.D.C. 2007) (cleaned up). Earlier in the litigation, the defendants argued for the enforceability of the provisions, citing legal authorities similar to those they cite here, *see* Supp. Mem. at 2–3, Dkt. 21, and Goodrich's response to the defendants' earlier filing failed to contend with those authorities head-on and instead incorporated his earlier opposition to the motion to dismiss, Supp. Resp. Mem. Regarding Discovery at 2 n.1, Dkt. 22 (incorporating Opp'n at 19–20, Dkt. 12). The Court ruled against Goodrich but nevertheless invited him to file a motion for reconsideration. This invitation went unanswered. Now, Goodrich seeks a second bite at the apple, recycling and expanding upon similar arguments raised in his earlier opposition. *Compare* Opp'n at 19–20, Dkt. 12, *with* Opp'n at 13–27, Dkt. 39. Goodrich fails, however, to offer any explanation as to why the Court should reconsider its prior legal ruling. The Bank "should not have to battle for the same judicial decision again without good reason" from Goodrich, such as "changed circumstance," intervening change of law, or manifest injustice. *Spirit of Sage Council*, 511 F. Supp. 2d at 41. Because Goodrich has shown none of the above, the Court will not reopen the issue.

## CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss is granted in part as to the gross-negligence and D.C. Securities Act claims, and its motion for summary judgment is granted as to the breach-of-fiduciary-duty claim. A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

January 30, 2024